# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| ROBIN EASTES, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | 1:09 CV 203 PPS |
| ACS HUMAN SERVICES, LLC, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

In recent years Indiana has privatized a number of traditionally public functions. Leasing the operation of the Indiana Toll Road comes to mind. Relevant to this case, the state entered a ten-year contract with IBM whereby IBM became responsible for distributing the state's Family & Social Services Administration ("FSSA") benefits. (DE 1 ¶ 10.) IBM then hired Defendant ACS as a subcontractor in charge of overseeing the Marion, Indiana FSSA office. (*Id*.) ACS was thus responsible for administering FSSA benefits, including, for example, the distribution of food stamps to eligible Indiana citizens. (*Id*. ¶ 11) According to the Complaint, distribution of these types of government benefits "is traditionally a public governmental function." (*Id*.) The plaintiff, Robin Eastes, was employed by a staffing company, Alpha Rae Personnel Incorporated, which placed Eastes with ACS at the Marion FSSA office in August 2008. (*Id*. ¶¶ 8, 9.)

Estes was eventually fired by ACS and she sued under 42 U.S.C. § 1983, claiming the firing was in retaliation for her having spoken to the media about serious problems in the Marion FSSA office. ACS moves to dismiss the Complaint for failure to state a claim arguing that because it isn't a state actor, any claim under § 1983 is a nonstarter. (DE 10.) But because I believe there are enough allegations in the complaint to suggest that Eastes was fired by ACS at

the direction of the state, the motion to dismiss is denied. I start with the facts as they are alleged in the complaint, and I construe them in the light most favorable to Eastes.

On May 13, 2009, Eastes spoke with a reporter from an Indianapolis television station about certain policies at the FSSA office. (*Id*. ¶ 12.) She told the reporter "that she was instructed to lie to individuals who called the Marion, Indiana office regarding the status of their benefits." (*Id*.) She also complained that a "pay policy" instituted by ACS created perverse incentives to give lousy customer service to Indiana citizens who called into the office seeking assistance. (*Id*.) Eastes claims that she went to the media on her own time and because it was a matter of public concern. (*Id*.) That same day, a camera crew from the television station came to the Marion FSSA office evidently in an effort to shine a spotlight on Eastes' allegations; supervisors of ACS took note. (*Id*. ¶ 13.) A few days later, ACS management informed Eastes about a rumor swirling around the FSSA office that Eastes had recently spoken to the media about improprieties within the office. (*Id*. ¶ 14.) Then, on May 27, 2009, Eastes' placement at FSSA was terminated. (*Id*. ¶ 15.)

Eastes alleges that her conversation with the reporter was a matter of public concern and thus protected by the First Amendment pursuant to 42 U.S.C. § 1983. She argues her termination was therefore unconstitutional. But ACS moves to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted because the First Amendment only protects individuals from state action, and Eastes' Complaint failed to allege facts showing that ACS acted under color of state law when it got rid of her.

The minimum requirements for pleading a claim for relief are contained in Federal Rule of Civil Procedure 8. That rule requires "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8. But under Rule 12(b)(6), which authorizes the dismissal of a complaint for failure to state a claim, the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555 (2007). Indeed, the Supreme Court recently held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that it plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Determining whether a complaint states a plausible claim for relief requires me to draw on my judicial experience and common sense. *Id*. at 1950. And although at this stage I must accept all allegations as true and draw all reasonable inferences in the complainant's favor, I don't need to accept threadbare legal conclusions supported by mere conclusory statements. *Id*. at 1949-50.

Section 1983 provides a cause of action for individuals whose constitutional rights are denied to them "under color of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. The shorthand description of this is that a plaintiff must demonstrate that a defendant deprived her of a federal right while acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). What this means is that § 1983 protects citizens from conduct by the government, but not from conduct by private actors, no matter how outrageous the conduct might be. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009).

There is an are exception to this rule. A private entity can be found to have acted under color of law if there is evidence of a concerted activity between a state actor and that private entity such that the private parties' "alleged infringement of federal rights [is] fairly attributable to the state." *Rendell-Baker v. Kohn,* 457 U.S. 830, 838 (1982). This requires "such a 'close

nexus between the State and the challenged action' that the challenged action 'may be fairly treated as that of the State itself.'" *Rodriquez v. Plymouth Ambulance Service*, 577 F.3d 816, 823 (7th Cir. 2009) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). So in order for Eastes' action to proceed, she must plead facts showing that ACS acted under color of state law in unconstitutionally depriving her First Amendment rights.

The Supreme Court has set forth a number of tests to determine whether a private party acted under color of state law. There's the joint action test, *see Dennis v. Sparks*, 449 U.S. 24, 27 (1980), the public function test, *see West v. Adkins*, 487 U.S. 42, 55-56 (1988), the state compulsion test, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 168 (1970), and the nexus test, *see Jackson*, 419 U.S. at 351. Though these tests provide guidance, "the Supreme Court has emphasized repeatedly that courts must decide the state-action issue on a case-by-case basis considering *all* of the circumstances." *Tarpley v. Keistler*, 188 F.3d 788, 793 (7th Cir. 1999) (emphasis in original).

According to Eastes, the facts in her Complaint demonstrate that ACS conspired or was jointly engaged with state actors to deprive her First Amendment rights.[1] (DE 12 at 6.) Under the "joint action" theory, "a private defendant acts under color of state law when he is a willful participant in joint action with the State or its agents." *Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir. 1991) (quoting *Dennis*, 449 U.S. at 27). To establish a joint action charge, public and private actors must share a common, unconstitutional goal. *Id*.

---

[1] Eastes also argues that her Complaint sufficiently alleges state action because the State of Indiana delegated a public function to ACS and the state compelled Eastes' termination. Because I find that her pleadings satisfy the joint action test (see below), I need not address those arguments here.

"In other words, a plaintiff must establish that a conspiracy, or an understanding, to violate the plaintiff's constitutional rights existed between the public and private actors." *Stagman v. Ryan*, 176 F.3d 986, 1003 (7th Cir. 1999.)

But ACS argues that nothing in Eastes' Complaint suggests that ACS acted jointly with the state to terminate her job assignment. ACS notes that the Complaint's only mention of the state is in reference to its contract with IBM to administer FSSA benefits. Thus, according to ACS, any connection between ACS and the state is mere speculation. *See EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (a complaint must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'") (citing *Twombly*, 550 U.S. at 555). And ACS should not be forced to undergo discovery without more; to find otherwise, would allow Eastes to embark on a costly and unfounded "fishing expedition."

Eastes counters, while she does not know every fact in support of her theory, that is not required by the rules. She cites to allegations in the Complaint stating that in the days leading to her termination "there was a rumor going around the Marion, Indiana FSSA office that Eastes had spoken with the media" and then ACS "participat[ed] in and/or caus[ed] the termination of Eastes' placement at the" FSSA office. (DE 1 at 14-15, 17.) And the intimate relationship between the state, IBM, and ACS as a result of the privatization of a formerly-public agency suggests that the state played a role in her termination. At the very least, Eastes argues, these facts entitle her the "benefit of imagination," *see Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009), such that she should be able to conduct discovery to flesh out the state's involvement with the alleged actions.

I find that Eastes' Complaint sufficiently alleges "joint action" to survive a Rule 12(b)(6)

motion to dismiss.  According to the Seventh Circuit, "it is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with."  *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002); *see also Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) ("All that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer.")  Indeed, the plaintiff must only "plead sufficient facts from which a conspiracy can be inferred" in order to survive a motion to dismiss.  *Quinones v. Szorc*, 771 F.2d 289, 291 (7th Cir. 1985).  To find otherwise would require the plaintiff to know the intricacies of a conspiracy before conducting discovery, an unrealistic and unfair requirement.  *See Walker*, 288 F.3d at 1008 (the plaintiff need not plead the overt act giving rise to the conspiracy); *Quinones*, 771 F.3d at 291 ("The very nature of a conspiracy obscures most, if not all, information about the alleged conspirators' agreement."); *Brucar v. Rubin*, 638 F.2d 987, 993 (7th Cir. 1980) ("Conspiracies are ordinarily clandestine, so that proof of them will often be by purely circumstantial evidence.")

  Here, from the facts in the Complaint it can be inferred that the state conspired with ACS to terminate Eastes for publicly voicing her displeasure with the way FSSA administered government benefits.  First, there are the obvious political implications of what Eastes said to the media.  While the State of Indiana may have privatized the administration of FSSA benefits, it was still on the hook to the citizens (and voters) of Indiana to ensure the effective and efficient administration of this formerly government function.  So there can be no question that the state has an interest in either making sure that ACS treats the people of Indiana fairly or, as Eastes contends, silencing claims that Indiana citizens were being treated unfairly.  Combined with the

suspicious timing – Eastes was terminated just two weeks after speaking to the media – and the "rumors" circulating throughout the FSSA office, these facts make it plausible that the state conspired with ACS to unconstitutionally terminate Eastes for speaking to the media about the way government benefits were distributed at the Marion FSSA office. And because these facts demonstrate the parties involved, the purpose of the conspiracy, and the approximate dates, ACS was on notice of Eastes' claim against it such that it could file an answer. Thus, Eastes is entitled to discovery to flesh out the role, if any, the state played in her termination. The proof, of course, is in the pudding. So whether Eastes can prove that the state was involved in her termination is another matter altogether – but that analysis must wait for another day.

### III. CONCLUSION

For the foregoing reasons, ACS' Motion to Dismiss (DE 10) is **DENIED**.

**SO ORDERED**.

ENTERED: January 21, 2010

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT