# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| ROBIN EASTES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:09 CV 203 PPS |
| | ) | |
| ACS HUMAN SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Robin Eastes brought this action under 42 U.S.C. § 1983 alleging that Defendant ACS violated her first amendment rights when it terminated her employment at a call center that ACS operates as a subcontractor to the State of Indiana. ACS previously moved to dismiss Eastes' complaint arguing that Eastes was not entitled to relief under Section 1983 because ACS was not a state actor. I denied the motion finding that Eastes' complaint stated a cause of action under a joint actor theory. This allowed Eastes to conduct discovery and establish facts showing that ACS and the State of Indiana acted together to terminate Eastes' employment assignment. At the time, Eastes also argued that ACS could be liable under Section 1983 because its operation of the call center was a traditionally public function. I did not address the public function argument in my ruling on the motion to dismiss, but it is now before me on summary judgment. The issue remains essentially the same: was ACS a state actor for purposes of Section 1983? Eastes was apparently unable to establish facts in support of her joint actor theory and has abandoned that argument leaving before me the question of whether ACS was a state actor under a public function theory. For the following reasons, I find that it was not.

**Background**

In recent years, the State of Indiana has been on a privatization kick. For example, the operation of the Indiana Toll Road has been leased to a private company on a long term lease. As part of the privatization movement, the State contracted with IBM to handle some of the services previously provided by the Family and Social Services Administration ("FSSA").[1] IBM, in turn, contracted with ACS to run a call center at the Grant County Service Center in Marion, Indiana. The primary function of the call center is to answer applicants' questions about the status of benefits requests as well as to process paperwork pertaining to those requests. ACS does not determine benefit eligibility or distribute benefits to citizens of Indiana. ACS makes its personnel and staffing decisions independent of both the State of Indiana and IBM.

Eastes was actually employed by Alpha Rae Personnel Incorporated, a staffing company. Alpha Rae assigned Eastes to ACS's call center in August 2008. Upon her assignment, Eastes received two weeks of training from ACS. This training was provided solely by ACS and did not include anyone from the State of Indiana or from IBM. Eastes began work as a call center operator after she completed her two week training period. During the next nine months of her employment, Eastes came to believe that the privatization of the FSSA benefits system was detrimental to benefit recipients. She was admittedly pretty opinionated on the subject and didn't keep her concerns to herself. She frequently challenged ACS's policies and procedures by complaining to her coworkers and management personnel, she complained to a member of the local media, and she encouraged two additional call center employees to speak with the media.

---

[1] The success of these efforts is subject to some debate. Indeed, the State and IBM are embroiled in a multi-million dollar lawsuit against one another in state court in Indianapolis. *See* http://wraltechwire.com/business/tech_wire/news/blogpost/7595225/ (last visited September 29, 2011).

ACS terminated her employment assignment at the call center in May 2009 after receiving reports that Eastes had, once again, criticized ACS's operation of the call center.

Eastes claims that she was sacked in retaliation for exercising her First Amendment right to speak out on a matter of public importance. ACS now seeks summary judgment on the grounds that it is not a state actor and therefore not subject to liability under Section 1983.[2]

**Discussion**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, facts and inferences are construed in favor of the non-moving party. *Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010). But if no reasonable jury could find for the nonmoving party, there is not a genuine issue of material fact. *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010).

Section 1983 exists to protect citizens who have been deprived of a constitutional or statutory right by persons acting "under color of any statute, ordinance, regulation, custom, or usage of any State." 42 U.S.C. § 1983. "To state a claim under Section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citation omitted).

The parties agree that ACS is a private entity. Therefore, for Section 1983 to apply, we must determine whether the alleged infringement can be fairly attributable to the State of

---

[2] ACS also argues that Eastes' claims must fail because the undisputed facts demonstrated that it did not violate Eastes' First Amendment rights when it terminated her assignment at the call center. Because I find that ACS was not a state actor, I need not address this argument.

Indiana.

Both the Supreme Court and the lower federal courts have recognized the difficulty of this task. There are a myriad of facts and circumstances that can transform private action into state action. These include:

> when private actors conspire or are jointly engaged with state actors to deprive a person of constitutional rights; where the state compels the discriminatory action; when the state controls a nominally private entity; when it is entwined with its management or control; when the state delegates a public function to a private entity; or when there is such a close nexus between the state and the challenged action that seemingly private behavior reasonably may be treated as that of the state itself

*Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815-16 (7th Cir. 2009) (citations omitted). The Seventh Circuit provided further guidance by categorizing these circumstances into four broad tests: (1) the symbiotic relationship test (satisfied when private and public actors carry out a public function); (2) the state command and encouragement test (satisfied when the state requires the actions of the private actor); (3) the joint participation doctrine (satisfied when the private action is the same as the state action); and (4) the public function test (satisfied when private activity is fairly attributable to the state)). *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 823-24 (7th Cir. 2009). Of course, these tests are not cut-and-dried, and the application of any such test is multi-faceted and fact-sensitive. *Hallinan*, 570 F.3d at 816 (citations omitted).

There is no evidence in this case that Indiana conspired with, controlled, directed, or managed how ACS dealt with its employees in general or Eastes in particular. Indeed, Eastes concedes this point. (DE 42 at 7.) Eastes argues instead that because ACS's operation of the FSSA call center is a traditionally public function, it acted under color of state law when it terminated her job assignment.

The public function test examines whether a private actor performs a function that is exclusively reserved to the State. *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 158 (1978). While a private actor may perform some public functions, it does not follow that its every move is attributable to the state. *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982) (explaining that private entities' acts "do not become acts of the government by reason of their significant or even total engagement in performing public contracts."). It is for this reason that "(a)n entity may be a state actor for some purposes but not for others." *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1230 (9th Cir. 1996). So courts must be careful to identify the specific function about which the plaintiff complains and then ask whether that particular conduct "is fairly attributable to the state." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-51 (1999). This inquiry is undertaken by examining whether there is a "close nexus" between the State and the challenged action. *Id*. at 52; *see also Blum v. Yaretsky,* 457 U.S. 991, 1002 (1982). In this case, no such nexus exists between Eastes' termination and the State.

ACS and Eastes disagree about the scope of the public function that ACS performs. ACS argues that to the extent it performs a public function, that public function relates only to questions concerning FSSA benefits. In other words, ACS believes that the plaintiff would have to allege some sort of constitutional infringement relating to FSSA benefits (such as her entitlement to public assistance) in order for ACS to be accountable as a state actor. (DE 41 at 14). In contrast, Eastes argues that because her assignment at the FSSA benefits call center involved the performance of a traditionally public function – answering FSSA benefit inquiries – she is entitled to Section 1983 protections relating to her employment status with ACS. (DE 42 at 8). Eastes' argument is simply a bridge too far.

The Seventh Circuit has not squarely addressed whether employment decisions made by private entities engaged in at least some traditionally public roles are state actions for purposes of Section 1983. However, in *Vickery v. Jones*, the Seventh Circuit touched on the issue when it said that "[a]dvocating the hiring of an applicant for employment does not fall into a category of activities that are exclusively the government's." 100 F.3d 1334, 1345 (7th Cir. 1996). This is simply another way of saying that courts must look to the specifics of the alleged wrongful conduct in deciding whether actions of a private party may be transformed into state action for purposes of Section 1983. *American Mfrs. Mut. Ins. Co.,* 526 U.S. at 51.

While the Seventh Circuit has not addressed the issue squarely before me, both the Fifth and the Ninth circuits have done so in a very similar context. *See Cornish vs. Corrections Srvs. Corp.*, 402 F.3d 545 (5th Cir. 2005); *George*, 91 F.3d 1227.[3] And both courts held that private employers who contract with the state are not state actors when they terminate an employee for speaking out against state policies.

In *George*, the plaintiff argued a position almost identical to Eastes' argument in this case. The plaintiff, a custodian employed by a private entity that operated a prison under contract with San Diego County, was fired after he complained to prison managers about policy violations at the facility. *George*, 91 F.3d at 1229. The plaintiff brought a Section 1983 claim alleging First Amendment violations against the defendant based almost exclusively on the public function approach. *Id.* The court rejected his argument as "missing the mark" and held

---

[3] The First Circuit has also suggested that employment actions by private entities performing government work would not be state action for purposes of Section 1983, but it did not rule on the issue directly. *Johnson v. Pinkerton Academy*, 861 F.2d 335, 338 (1st Cir. 1988) (noting that in the case of a private entity providing education services, Section 1983 protections might flow to the students it is charged with educating, not to the teachers whom it employs).

that "the relevant inquiry is whether [the defendant's] *role as an employer* was state action." *Id*. at 1230 (internal quotation and citation omitted; emphasis in original). The court went on to hold that the plaintiff had not established any fact to suggest that the defendant had "become the government" for employment purposes. *Id*.

The Fifth Circuit has taken a similarly narrow view of state action for purposes of the public function test in the context of employment decisions. In *Cornish*, the plaintiff was a prison guard employed at a correctional facility operated by a private defendant. 402 F.3d at 547. Plaintiff was fired after he complained about protocol and policy violations at the facility. *Id.* at 548. Like Eastes (and George before her), Cornish argued that because the defendant performed a broad public function – the operation of a juvenile detention facility – exclusively reserved to the state, it was liable under Section 1983 as a state actor. *Id.* at 550. The Fifth Circuit disagreed. In upholding the dismissal of Cornish's complaint, the court took care to distinguish between the defendant's role as Cornish's employer on the one hand, from its role as a general operator of a juvenile facility on the other. *Id*. Here's how the court put it: "The issue, however, is whether [the defendant] acted under color of state law in terminating Cornish's employment, *not* whether its providing juvenile correctional services was state action." *Id*. (emphasis in original).

The analysis in this case is the same as in *Cornish* and *George*, and so too is the result. Eastes argues that the actual staffing of a call center to answer questions about the status of benefits and process paperwork is a traditionally and exclusively public function and is, therefore, somehow different than a prison employing guards to watch the inmates, but she offers no legal or factual support for this contention. Eastes merely says that states have been

contracting for prison services "for years" and that this somehow makes the analysis different from the present case. (DE 42 at 8.) This distinction eludes me.

The two cases that Eastes attempts to analogize to her situation, *Atkins*, 487 U.S. 42, and *Rodriguez*, 577 F.3d 816, are simply not applicable. Neither case deals with an employee seeking Section 1983 protections stemming from an employment action. In *West*, the Supreme Court addressed whether a physician is a state actor when he is employed by the state to provide medical services to inmates in a correctional facility. *West*, 487 U.S. at 54. The court held that the physician "acted under color of state law for purposes of Section 1983 *when undertaking his duties in treating petitioner's injury*." *Id.* (emphasis added). In *Rodriguez*, the plaintiff was also a prison inmate who complained of Eighth Amendment violations arising out of actions taken by an ambulance service and two hospitals. *Rodriguez*, 577 F.3d at 819. But, again, the plaintiff was complaining about actual medical services he received (or failed to receive) while under the care of private entities contracted with the state for the specific purpose of providing medical care. *Id*.

By contrast, in both *George* and *Cornish*, the courts assumed that the private entities were acting under color of state law when it came to providing correction services to the government, and yet still came to the conclusion that employment decisions made within the prison facilities are not state actions for purposes of Section 1983. *Cornish*, 402 F.3d at 550, *George*, 91 F.3d at 1231. In other words, both *Cornish* and *George* are merely adhering to the Supreme Court's mandate to consider "the specific conduct of which the plaintiff complains" when attempting to determine whether a private actor should be treated as a state actor. *American Mfrs Mut. Ins. Co.*, 526 U.S. at 51.

ACS was not a state actor for purposes of Section 1983 when it was making its decision to terminate Eastes' employment. The State of Indiana contracted with ACS to operate a call center tasked with answering inquiries relating to FSSA benefits. To the extent that this arrangement could be construed to have caused ACS to undertake a traditionally public function, that function is the handling of FSSA benefits inquiries, not the general operation of a call center which would include the hiring and firing of its operators. In other words, "the specific conduct of which the plaintiff complains," *American Mfrs Mut. Ins. Co.*, 526 U.S. at 51, is her termination. Like the decisions to terminate the plaintiffs in *George* and *Cornish*, Eastes' termination was not done by a state actor.

In sum, because ACS was not functioning as a state actor when it decided to terminate Eastes, she is not entitled to relief under Section 1983.

## CONCLUSION

As a result, ACS's Motion for Summary Judgment is **GRANTED** and Eastes' claims are hereby **DISMISSED**.

**SO ORDERED**.

ENTERED: September 30, 2011.

s/ Philip P. Simon  
PHILIP P. SIMON, CHIEF JUDGE  
UNITED STATES DISTRICT COURT